SHIPP, surviving partner, *vs.* DAVIS.

1. S. & McL., partners in planting, bought goods in 1872-1874 from D., amounting in value to some $1200 or $1250. On August 17, 1874, McL. went to the store of D.; the accounts were drawn off, but for want of time were not examined. D. wanted $700; McL. agreed to give him the firm note 'for that amount, and on it the money could be raised; he also said that D. must give him a note for the same amount, due and payable at the same time, "as a show-ing" in case of his death. This was done. McL. told D. not to put the note given him on the books, as he would come back in a short time and have a settlement. D. raised the money on the note, but afterwards took it up himself. The account of S. & McL. with D. for 1874 amounted to $98. They paid him in the latter part of that year, $600, and no application was made of the excess. No set-tlement was had, and the note never went on the books. In 1878 McL. died; D. became his administrator, and received the counter-note given by him. It has since become barred. Suit was brought in 1880 on the note and account of S. & McL., but by amendment the account was stricken:

*Held*, that the counter-note given by D. was admissible in evidence as throwing light on the transaction.

(*a*.) If it be held to stand as a receipt only, it was certainly admissible. If it be a note proper, can the maker claim the benefit of the bar of the statute of limitations attaching while the note was in his hands as administrator?

2. There was no error in rejecting evidence of the contents of de-fendant's answer to a bill in another county, in which he expected to settle the rights of the parties in reference to the notes, nor testi-mony that he had not sued on the counter-note for that reason.

3. The verdict is contrary to evidence, and the ends of justice will be promoted by granting a new trial.

October 17, 1882.

Evidence. New Trial. Partnership. Promissory Notes. Before Judge WILLIS. Chattahoochee Superior Court. March Term, 1882.

Reported in the decision.

PEABODY & BRANNON, for plaintiff in error.

JOS. F. POU; W. A. LITTLE, for defendant.

CRAWFORD, Justice.

Shipp and McLester were partners in planting.   Davis, a neighboring merchant, sold them goods, in 1872-3-4, amounting to some $1200.00 or $1250.00.   On the 17th day of August, 1874, McLester went to the store of Davis for the purpose of looking over the accounts and having a settlement.   The accounts were drawn off, but for want of time he did not examine them.   He inquired of Davis how much money he wanted that day; his reply was $700.00.   McLester agreed to give him the firm note for that amount, upon which he could raise the money from some of the banks in Columbus, and further said that Davis must give him a note for the same amount, due and payable at the same time, as a showing in the event of his death.

The two notes were executed, and delivered as agreed upon, and to fall due on the first day of November thereafter.

McLester then told Davis that he must not put the note he gave him on the books, as he would come back in a short time and have a settlement.   Davis used the note to raise the $700.00 through one of the banks in Columbus, and afterwards took it up himself.

The books of Davis showed that in October, 1874, there was a credit of $100 to the account of Shipp & McLester, and another, in December thereafter, of $500.00, though the account of that year amounted only to $98.00, but no other application was made of the excess of payment.

No settlement was ever had.   The note never went on the books, nor was it ever taken up or paid by Shipp & McLester.

In 1878 McLester died. Davis became his administrator, and the note, which he, Davis, had given to Shipp & McLester, fell into his hands, and thus he held both.

On the 30th day of October, 1880, Davis sued Shipp, the surviving partner, on the note which McLester had given him on the 17th day of August, 1874, and in the same action on an account of $667.60, running from about the 1st of October, 1873, to about January 1st, 1875.

At the trial term of the court, plaintiff dismissed as to the account, and proceeded alone for the recovery of the note.

The defendant pleaded the general issue, payment, the statute of limitations, no consideration, set-off by plaintiff's note of same date and amount, and *non est factum.*

On the trial of the case, the foregoing facts were not contested.

Shipp testified that he knew nothing of either note until after the death of McLester. He offered in evidence the note given by Davis concurrently with the note sued, and which he had pleaded as ·a set-off. This was ruled out by the court, because upon its face it was barred by the statute of limitations.

He offered further to prove that the reason why he had not brought suit on the note was that he had answered a bill in Stewart superior court, filed by the plaintiff, and that he expected to settle the rights of the parties in reference to these two notes in that litigation.

The jury, under the charge of the court, returned a verdict for the plaintiff for the full amount of the note with interest.

The defendant moved for a new trial because of the rejection of the Davis note, the exclusion of the reasons why suit had not been brought upon it, when offered in evidence, and because the verdict was contrary to evidence, contrary to law, and contrary to the principles of equity and justice.

The motion was overruled, and the defendant excepted.

1. The facts presented by this record make a case *sui generis*, and necessarily involve other facts which should be brought out to settle the respective rights of the parties.

It is admitted that there was a partnership liability, but the amount of that liability is not definitely fixed by the plaintiff, who testified that the whole account due from Shipp & McLester was from twelve to twelve hundred and fifty dollars.

Of this sum, six hundred had been paid in the latter part of 1874, and this verdict was for seven hundred, making fifty certainly, and perhaps one hundred dollars, more than was due.

The matter of accounts was not inquired of, because they were eliminated from the case, and the issue alone made upon the note.

This being so, the true indebtedness of the defendant was not ascertained, for that arose unquestionably upon the accounts, and not upon the note.

In what manner soever this note may have been connected with the accounts, if at all, it has not been claimed that it settled the amount of defendant's liability, even to the extent of its face value.

It was admitted by the plaintiff, that it was not to be put on the books; that it was given to raise the amount it called for; that the accounts were not examined or approved, and that in a few days the maker was to have returned, when they were to have had a settlement.

McLester, not satisfied even with this understanding, required a note corresponding in date, amount and time of maturity with this, to cover and protect himself against any change in liability, until the expected settlement should take place.

The two notes, then, as between these parties, appear to have formed but one contract, and that, whether the Davis note should be held as a receipt against the accounts or as a note to stand as a set-off against the McLester note.

So that in our view, the same should have been admitted in evidence to allow its consideration to be inquired of, and to throw light upon the whole transaction.

But it is said that it was barred by the statute of limitations, and for that reason should have been excluded.

If it were a receipt only, as stated by one of the witnesses, then it certainly should have been admitted.

If a note against Davis, then the question arises, can he claim the benefit of the statute of limitations in his own favor, when it had fallen into his hands as McLester's administrator, and slept until it had lost its vitality?

We hold, therefore, that the judge erred in excluding it from the jury.

2. We think that there was no error in rejecting the testimony offered as to the contents of the answer of defendant's bill in Stewart superior court, nor of the reasons why the note had not been sued.

3. That the verdict is contrary to evidence appears from the testimony of plaintiff himself, as we have already stated.

It is further claimed that the verdict is contrary to the principles of equity and justice, because the jury was bound to apply the credits of the six hundred dollars to the payment of the note sued on, as the testimony showed that they had never been applied, and the note sued was given for the accounts of the oldest dates,

Upon this branch of the case, the law of it can be better ruled when the facts are ascertained by the verdict of a jury.

It may be that the note rejected was to stand always as a set-off against the note sued; or it may be that it was understood to be a receipt only, and that the note sued was given in consideration of the oldest items of the accounts.

Appearing to us, then, that error was committed, and substantial justice not reached, the judgment is reversed, and a new trial ordered.

Judgment reversed.